Wilde J.
delivered the opinion of the Court. This case comes before us on an appeal from a decree of the judge of probate, and the general question to be decided is, whether the will of John Hawes has been duly proved, or whether it ought to be disallowed for the reasons urged by the counsel for the appellant.
The first and principal objection is, that the will was not attested by three credible witnesses, as required by the statute.
The attesting witnesses were inhabitants of South Boston at the time of attestation, and it is contended that they were inter *362 ested in the disposition made of the testator’s estate by the W1^ *n question, and so were not credible, within the true mean ing of the statute.
By the provisions of the will, a large real and personal estate is given to trustees for the use and benefit of the inhabitants oL South Boston ; one moiety of the income and proceeds of which is to be applied to the support and maintenance of the gospel ministry of the congregational denomination in South Boston ; and the other moiety to be appropriated to the purpose of establishing a public school in the same place.
That a witness not competent, by reason of interest or otherwise, is not credible within the true meaning of the statute, cannot now be controverted ; but at what time the witnesses to a will are to be competent, is a question which has been much litigated, and has given rise to conflicting opinions.[1]
In the case of Wyndham v. Chetwynd, 1 Burr. 414, Lord Mansfield maintains, that if the witnesses are competent at the time of the probate of the will, it is sufficient. While Lord Camden held, in the case of Hindson v. Kersey, 4 Burn’s Ec. Law, 88, that the witness must be competent at the time of the attestation, because the statute directs the mode of executing and attesting a will, and not the method of proving those facts in a court of justice ; and therefore that the quality of credibility is necessarily requisite in the witnesses at the time of attestation. Both opinions are respectively supported ny other decisions, and it may be difficult perhaps to determine on which side the weight of authority preponderates. But it appears to me that the opinion of Lord Camden is sustained by the more convincing and consistent reasoning, and is more conformable to the language and apparent intention of the statute.
*363 The object of the statute was to prevent frauds as well as perjuries. Wills are frequently made by a testator in extremis, or when he is greatly debilitated by age or infirmity, when frauds may be practised upon him with facility by the crafty and designing ; and it was the intention of the statute to guard against such practices, and to protect the testator by surrounding him with disinterested witnesses at the critical and important moment when he is about to execute his will. They are to be disinterested and credible also, at the time of attestation, because in some sense they are made the judges of the testator’s sanity. It is their duty to inquire into this matter, and if they think the testator not capable, they should remonstrate and refuse their attestation.
There is another important reason for referring the credibility of the witnesses to the time of attestation, rather than to the time of the probate of the will; for if the statute is to be understood as referring to the latter period, it would follow that a will attested by unexceptionable witnesses, could not be proved, if the witnesses, after the attestation and before the probate, should become insane, infamous, or otherwise disqualified ; which would be opposed to the current of the authorities ; for I take it to be well settled, that in such cases the handwriting of the witnesses may be proved, and the will be thereupon allowed.
Besides, it is unreasonable to suppose that it was the intention of the statute to establish a mode for the execution and attestation of wills, which might be thus rendered ineffectual by subsequent events over which the testator could have no control.
It is however unnecessary to discuss this question more fully, for if any beneficial interest passed to the witnesses by virtue of the will, it was not of a nature to be extinguished by their release; so that if they were incompetent at the time of the attestation, they are equally so at the present time.
The question then is, whether the witnesses were competent at the time of attestation.
An interest to disqualify a witness must be a present vested interest, and not uncertain and contingent. And where the nterest is of a doubtful nature, the objection goes to the credit, *364 and not to the competency of the witness. This is the rule as Lid down by Starkie, and it is supported by the cases to which he refers. 4 Stark. Ev. 745. The interest must be pecuniary, or such as directly or indirectly affects property, and such an interest, however minute, will disqualify a witness; while other interests or influences, although they be of a nature to cause a more powerful bias, will only affect his credibility. Such is the influence arising from the relation of parent and child, and that of other near connexions. The heir apparent to an estate is competent to testify in support of the claim of his ancestor, however certain and immediate the witness’s expectation may be of inheriting the estate. In this, and in many other like cases where the bias may be strong, the witness is nevertheless admissible, and the objection only goes to his credit.
- The question, therefore, is, whether the attesting witnesses, at the time of attestation, had any certain interest under the provisions of this will; and we think they had not. Whatever interest they had, was contingent. It is true that all legacies and testamentary dispositions are in some respects contingent, but here the contingency was remote and was not determinable by the death of the testator, a life estate being given to the testator’s wife, and the estate to the trustees was not to vest in possession in them until her decease. The interest of the witnesses was also contingent in another respect. The will provides for the support and maintenance of the gospel ministry in the first congregational church and society which might be incorporated and regularly organized in South Boston. At the time of the attestation, no such church or society had been incorporated or organized ; it was uncertain whether it ever would be; and still more uncertain whether the witnesses would become members, should such a church and society be organized.
In the second place, we hold, that if the interest of the witnesses was not contingent, still it was not of a nature to affect their competency. The privilege of attending public worship, and the advantages of education, although of the highest importance, do not constitute such an interest as will disqualify a witness ; not even when the establishment of institutions for *365 these purposes may raise the value of the witness’s property. Such a consequential benefit will only affect the credibility of a witness. So as to private establishments, such as factories and the like, which may increase the trade and wealth of a town, or the demand for labor; these must necessarily be more or less beneficial to the inhabitants of the place in which they are situated ; yet it cannot be doubted that such inhabitants would be competent witnesses in a case, upon the determination of which the erection or continuance .of such an establishment might depend. Such consequential advantages derived from public or private establishments, or the general improvement of the country, are not regarded as interests affecting the competency of witnesses.
And this case does not come within the class of cases in which witnesses have been excluded because the event of the cause might relieve them from a tax or burden on their estates In the city of Boston, no general tax is assessed for the maintenance of the ministry. But each church and society raises the necessary funds for this purpose by a tax on the members of the society or on the pews ; and no one is compellable to join any religious society ; so that the payment of taxes for the support of public worship is altogether voluntary. Public schools, however, are supported by a general tax on the inhabitants. But we do not know, nor can it be ascertained, that the donation in question will have the effect of reducing the school tax. The number of schools may be increased, and the means of education enlarged, but this does not affect the competency of the witnesses.
In the case of Hindson v. Kersey, before cited, the testator had devised certain lands to trustees, to be applied to the use of the poor, who by reason of infancy, impotence, or old age, were unable to work, and to place out as apprentices the children of such poor. The witnesses who attested the will were seised of lands in fee within the parish at the time of attestation. It was decided by a majority of the court, that the witnesses were credible and the will duly attested.
Lord Camden dissented on this point, as well as on that already noticed, on the ground that the benefaction would °of necessity diminish the parish taxes for the relief of the poor. *366 By the 43 Eliz. c. 2, the parish are only taxable for the ner.essary re^’ef °f the poor. If the tax, therefore, should continue the same, it would exceed that sum, when added to the charity, which would be necessary for their relief; which would be illegal This was the ground of Lord Camden’s very able opinion in that case. But it fails in the present case, which more resembles the case of Cornwell v. Isham, 1 Day, 35. That however was a stronger case of interest than the present, as the donation there was directly to the inhabitants of the society of which the witnesses were members, and was to be managed according to the direction of the inhabitants. In the present case the donation was to trustees, to be appropriated and managed by them under the directions of the will. I do not, however, consider this difference as very material. In that case, as in this, the donation was for the purpose of maintaining a public school; and the witnesses were inhabitants of the parish, and resided near the place where the school was to be képt, possessed large estates, and had minor children to educate. That case was fully argued by able counsel, and the court decided that the witnesses were credible and the will duly attested. It was said in that case, “ that all the cases there cited, in which the witnesses were deemed incompetent on the ground of interest,” were discharged from the payment of rates or taxes, or relieved from other burdens. And this I apprehend is the settled distinction upon which all the cases on this point will be found to depend. No expected participation of the benefits of a public benefaction not affecting property, has ever been held a valid objection against the competency of a witness. It is clear, therefore, that unless the witnesses are to be relieved frdm their taxes by this donation, they are competent. It is possible, though not probable, that they may be thus relieved, but neither possibilities nor even probabilities are sufficient to disqualify a witness. As to ministerial taxes, they are paid voluntarily, or rather the liability to pay them is voluntarily assumed, and may at will be terminated. And as to school taxes, it does not appear, nor is it probable, that they have been, or ever will be diminished by this donation. By improving the means of education, the witnesses’ children and their posterity may be benefited ; but this confers no interest on the *367 witnesses. If the whole estate had been given absolutely to their children, still the witnesses would be competent.
For these reasons we are of opinion that the will was duly attested. The witnesses are competent, and therefore credible within the meaning of the statute ;[1] for I think it clear, that the word “ credible ” is used in the statute in the abstract sense as denoting persons capable of obtaining credit. Now every person who is allowed to give testimony in a court of justice may be believed ; otherwise it would be absurd to allow him to testify. His testimony may or may not be believed ; but this cannot be ascertained at the time of the attestation. It follows, therefore, that all competent witnesses are credible, within the true intent of the statute.
The other objections to the probate of the will clearly cannot be sustained. It has been argued that there had been an implied revocation of the will, the testator, in his lifetime, and subsequently to the making of his will, having conveyed by deed a part of the estates devised.
To the extent of these conveyances there is a revocation pro tanto, but no more. In order to- defeat altogether a testamentary disposition, there must be a subsequent conveyance of the whole estate. If the conveyance be a of a part only, it will only amount to a revocation pro tanto. Toller, 19. If A., therefore, devise all his real estate to B., and afterwards, on B.’s marriage, settle upon her a part of such estate, in respect to the remaining part of it the will shall operate. Clarke v. Berkeley, 2 Vern. 720. So if A. devise land to B. in fee, and afterwards grant a lease to C. for a term of years to commence after A.’s death, or mortgages the land in fee, the devise, subject to the lease or mortgage, shall continue good. Coke v. Bullock, Cro. Jac. 49 ; 1 Roll. Abr. 616 ; Harkness v. Bayley, Prec. Ch. 515 ; Tucker v. Thurston, 17 Ves. 134.
In the present case there is not a single circumstance from which it can be reasonably inferred that the testator had any intention to revoke his will in toto ; but quite the contrary. Generally the legacies were paid and the conveyances made *368 according to the provisions of the will; and in some cases releases were taken from the grantees of their right and title under the will ; which shows conclusively that the testator intended the will should stand good, subject to the alterations.
Then it is contended that the devise to the trustees is void on various grounds. But this question is not examinable by us sitting as the Supreme Court of Probate. The construction of the will, and the validity and effect of its various provisions, are to be determined by a court of common law jurisdiction.
The probate of a will does not affect the validity or invalidity of any particular clause in the. will. This is not the case, therefore, in which a limited probate is necessary, the proof being sufficient to establish the will as it respects the real as well as the personal estate.

Decree of the judge of probate affirmed.

 By the Revised Statutes it is enacted that no will, excepting, &c. shall be effectual, &c. unless it be in writing, &c. and attested and subscribed in the presence of the testator, by three or more competent witnesses; and if the witnesses are competent at the time of attesting the execution of the will, Iheit subsequent incompetency, from whatever cause it may arise, shall not prevent the probate ana allowance of the will, if it be otherwise satisfactorily proved Revised Stat. 62, § 6. See 2 Stark Ev. (5th Am. ed.) 921 ei seq.

 See Bacon v. Bacon,17 Pick. 135; Revised Slat. c. 62, § 6.